**Harold J. O'BRIEN et al.,**
**Plaintiffs-Appellants,**
v.
**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association, Defendant-Appellee.**

**Nos. 78–1111, 78–1112, 78–1115, 78–1117, 78–1704 to 78–1706 and 78–1708.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1978.

Decided Feb. 23, 1979.

As Amended April 5, 1979

---

James S. Gordon, Chicago, Ill., for plaintiffs-appellants.

Bryson P. Burnham, Chicago, Ill., for defendant-appellee.

Before TONE and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

TONE, Circuit Judge.

The district court dismissed the federal securities law counts of the complaints in these six consolidated cases for failure to state a claim for relief under § 10(b) of the Securities Exchange Act of 1934 and Rule

---

\* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

10b–5 thereunder. Subsequently the court dismissed pendent state law counts alleging breaches of fiduciary duty. Final judgments were entered for the defendants. We hold that the court was correct in dismissing the federal securities counts but reverse the judgments with directions to reinstate the pendent claims.

The facts pleaded in the several complaints are similar in all material respects. Plaintiffs are the respective trustees of nine separate union or employee pension trust funds. In each case, the plaintiffs entered into an agreement with the defendant, the Continental Illinois National Bank and Trust Company of Chicago, under which funds of the pension trust were turned over to the bank for investment. Although some of the agreements are characterized as trust agreements and the others as agency agreements,[1] the rights and relationships of the parties were essentially the same in each case: Continental was given the responsibility of making such investments as in its sole discretion it saw fit, subject to a fiduciary duty of due care. Plaintiffs had power to terminate the agreements at will but no right to receive notice of, or to be consulted about, proposed investments and no right to veto investment decisions.

Acting pursuant to the agreements, Continental bought and sold for the benefit of each of the several trust accounts the common stock of Penn Central Company, Trans World Airlines, Inc., Lums, Inc., Boise Cascade Corporation, Management Assistance, Inc., and United States Freight Company, and bought subordinated debentures of Interway Corporation. Plaintiffs allege that at the time of these transactions Continental was a substantial creditor of these companies; that in some instances, Continental received information as a creditor that was not available to others; and that in other instances Continental's role as a creditor enabled it to affect dividend policies. It is alleged that Continental purchased the securities of these companies without disclosing to plaintiffs its conflicts of interest arising from its role as creditor, failed to disclose adverse inside information about the investment quality of the securities purchased, and in some instances delayed selling a company's stock in order to protect itself as a creditor of the company.

Plaintiffs further allege that if Continental had not withheld the information in question, they would have exercised their rights to terminate the trust or agency agreements and thereafter would not have purchased certain securities and would not have retained others. The withholding of information is asserted to have constituted deceptive practices in connection with the purchase and sale of securities within the meaning of § 10(b) and Rule 10b–5, giving rise to private claims for damages.

As noted above, plaintiffs also allege that Continental's conduct in failing to disclose the alleged adverse information and in purchasing and retaining the various securities for the benefit of the funds, constituted a

1. The trustees of seven of the funds entered into agency agreements, under which defendant was employed as an investment agent with power to invest fund assets in securities on behalf of the funds. The other trustees entered into trust agreements, under which defendant was designated a trustee with the same power to make investments for the benefit of the funds. The following table identifies in abbreviated form the first named plaintiff and fund or funds and states the type of agreement in each of the cases:

| Appeal Number and First Named Plaintiff | Funds | Type of Agreement |
| --- | --- | --- |
| 78–1111 O'Brien | Bakery Drivers | trust |
| | Carpenters | agency |
| | Food Clerks | agency |
| | Roofers | trust |
| | CTA Plan | trust |

| Appeal Number and First Named Plaintiff | Funds | Type of Agreement |
| --- | --- | --- |
| | Plumbers | trust |
| 78–1112 Hanley | Hotel Employees | trust |
| | General Service Employees | trust |
| | Dairy Employees | trust |
| 78–1704 Lipson | Credit Union (CUNA) | agency |
| 78–1706 O'Donnell | United Pilots (ALPA) | trust |
| 78–1115 Kenco, Inc. | Kenco, Inc. | agency |
| | Royal Theatre | agency |
| | Fidelity Mtge. | agency |
| 78–1708 Brabec | Plumbers | trust |
| | Local 705, Teamsters | agency |
| | Credit union (CUNA) | agency |
| | Carpenters | agency |

common law breach of fiduciary duty and breach of contract.[2] These state law claims were joined in the federal actions on the basis of pendent jurisdiction, except for a few instances in which jurisdiction was founded on diversity of citizenship.[3]

Continental's original motions to dismiss the complaints in these cases were denied on May 10, 1974 by Judge McGarr. *Local 734 Bakery Drivers Pension Fund Trust, et al. v. Continental Illinois National Bank and Trust Company of Chicago,* CCH Fed.Sec.L. Rep. ¶ 94,565 (N.D.Ill.1974). After the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), Continental moved for reconsideration of Judge McGarr's ruling. While the motion was *sub judice* the Supreme Court decided *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). On April 25, 1977, Judge Flaum, to whose calendar the cases had been reassigned, vacated the May 10, 1974 order and dismissed plaintiffs' 10b–5 claims. *O'Brien v. Continental Illinois Bank and Trust Co.,* 431 F.Supp. 292 (N.D.Ill.1977). On November 28, 1977 the court entered a separate memorandum of decision dismissing the pendent state law claims. *O'Brien v. Continental Illinois Bank and Trust Co.,* 443 F.Supp. 1131 (N.D. Ill. 1977). These appeals followed.

## I. The Federal Securities Laws Counts

It is undisputed that Continental was vested with sole discretionary power, as trustee or agent under the various agreements, to make purchases and sales of securities with the funds entrusted to it. Plaintiffs were not entitled to receive notice of a contemplated purchase or sale, to participate in the investment decision, or to veto that decision when they learned of it. They did, however, have authority to terminate the agreements at will, and they eventually exercised that authority.

2. Except for the plaintiffs in *Kenco,* who voluntarily dismissed their state law claims after their federal claims were dismissed.

3. The plaintiffs in *Lipson* and *O'Donnell* and one of the plaintiffs in *Brabec* pleaded diversity jurisdiction. Their state law claims were not dismissed.

Plaintiffs thus could not and did not allege that they were induced to buy or sell securities by the nondisclosures. They alleged rather that they "were induced not to exercise their respective powers to terminate the . . . contractual relationships" with Continental (O'Brien, Hanley, Lipson, Brabec), that they "were induced to take no action with respect to the investment of the funds of the Pension Fund by Continental in [the subject] securities" (O'Donnell), or that "they had no knowledge that Continental was investing in the [securities] for their accounts" (Tenco).[4]

### A. The Retained Securities

█ The sales plaintiffs allege they would have made if they had received the information in question and revoked the trust or agency agreements, were never actually made. These retention claims are squarely within *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), in which th₁ Court adopted the rule of *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952), that only purchasers and sellers of securities are entitled to maintain actions for violation of § 10(b) and Rule 10b–5. The *Birnbaum* rule does not allow a remedy under Rule 10b–5 to persons "who allege that they decided not to sell their shares because of . . . a failure to disclose unfavorable material." 421 U.S. at 737–738, 749, 754–755, 95 S.Ct. at 1926.

It is irrelevant that, as plaintiffs argue, they ultimately sold their securities. A plaintiff may not bring his retention claim within the *Birnbaum* rule by selling his securities before he sues. The failures to disclose were not "in connection with" the ultimate sales. *Cf. O'Hashi v. Varit Indus-*

4. Defendant does not argue that the information it allegedly failed to disclose was not material, so we assume for purposes of this appeal that it was.

*tries,* 536 F.2d 849, 852 (9th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 538, 40 L.Ed.2d 616 (1976).

### B. *Purchased Securities*

■ With respect to the purchases made by Continental, plaintiffs do not fit as neatly into the categories of persons to whom the *Birnbaum* rule denies the 10b–5 remedy. *See Blue Chip Stamps,* 421 U.S. at 737–738, 95 S.Ct. 1917.

Continental argues, however, that it and not plaintiffs purchased the stock and, therefore, the *Blue Chip* rule applies. Although some judges and commentators have interpreted *Blue Chip* as Continental does,[5] we are unable to say categorically that plaintiffs, on whose behalf Continental bought, were not in any sense purchasers of the securities. Nevertheless, we believe that considerations that helped to shape the decisions of the Supreme Court in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), and *Blue Chip* as well, require the same result here, and that therefore a cause of action under § 10(b) and Rule 10b–5 is not to be implied in the circumstances of this case.

In the *Santa Fe* case the Court held that unfairness in the securities transaction in question, a short-term merger that squeezed out minority shareholders, was not enough to create a 10b–5 cause of action, and that in view of the language of § 10(b), deception or manipulation was a necessary element of a claim under that section. 430 U.S. at 474–477, 97 S.Ct. 1292. The Court went on to say, in Part IV of its opinion,

that even if the language of the statute were not dispositive, there were "two additional considerations that weigh heavily against permitting a cause of action under Rule 10b–5 for the breach of corporate fiduciary duty alleged in this complaint." First, "a private cause of action under the anti-fraud provisions of the Securities Exchange Act should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act." 430 U.S. at 477, 97 S.Ct. at 1303, quoting from *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The "fundamental purpose" of the Act was "implementing a philosophy of full disclosure." The Court was "reluctant to recognize a cause of action here to serve what is 'at best a subsidiary purpose' of the federal legislation." 430 U.S. at 478, 97 S.Ct. at 1303, quoting from *Cort v. Ash,* 422 U.S. 66, 80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The second consideration relied on by the Court was that "the cause of action [is] one traditionally relegated to state law . . . .," 430 U.S. at 478, 97 S.Ct. at 1303, quoting from *Piper v. Chris-Craft Industries, Inc., supra,* 430 U.S. at 40, 97 S.Ct. 926, which in turn quoted from *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. 2080. The Court declined to superimpose federal fiduciary standards that "would overlap and quite possibly interfere with state corporate law." 430 U.S. at 479, 97 S.Ct. at 1303.

Although Justices Blackmun and Stevens declined to join in Part IV of the opinion, five justices did join in it, and we are to be guided by the principles it enunciates.[6] The

---

5. *E. g., Fitzsimmons v. Old Security Ins. Co.,* CCH Fed.Sec.L.Rep. ¶ 96,236 (N.D.Ill.1977); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270 (N.D.Ill.1976). *See also, Survey of 1974 Securities Law Developments,* 32 Wash. & Lee L.Rev. 721, 745 (1975); Comment, *Blue Chip Stamps v. Manor Drug Stores: Failure To Solve The Purchaser-Seller Problem,* 70 Nw.U. L.Rev. 965, 993 (1976). A pre-*Blue Chip* decision of the Sixth Circuit allowed an action by the beneficiary, whom it described as having the "interests of a de facto seller," against a purchaser from the trustee. *James v. Gerber Prods. Co.,* 483 F.2d 944, 948 (6th Cir. 1973). *See also Heyman v. Heyman,* 356 F.Supp. 958, 962–966 (S.D.N.Y.1973).

6. Justice Stevens, explaining his reasons for refusing to join in Part IV, said it was unnecessary to the decision and also that he believed *Blue Chip* and *Piper* were incorrectly decided and he foresaw "some danger that Part IV . . . may incorrectly be read as extending the holdings of those cases." 430 U.S. at 481, 97 S.Ct. at 1304. An alternative ground for decision, unnecessary though it may be, is to be treated as a holding, for ". . . where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*" *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537, 69 S.Ct. 1235, 1236, 93 L.Ed. 1524 (1949). We are therefore, as a lower court, obligated to attempt as best we can to apply the principles

first of these principles is that a court should be reluctant to imply a 10b–5 cause of action for wrongs that do not fall within § 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities. 430 U.S. at 477–478, 97 S.Ct. 1292. In applying this principle in the case at bar, the relevant inquiry is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they actually did purchase or sell.

The important point for our analysis is the decision to which the nondisclosure related. If that decision is whether to purchase or sell a security, the nondisclosure is in connection with the purchase or sale. Here, however, that decision was not whether Continental should buy or sell the securities in question, for the terms of the trust and agency agreements made that decision solely Continental's and plaintiffs had no voice in it.[7] The decision to which the nondisclosure related was whether plaintiffs should terminate the trust or agency agreements or, perhaps, take some action against Continental. As Judge Flaum correctly stated in his memorandum of decision granting the motions to dismiss the federal claims,

> [T]here was no investment decision to be made by plaintiffs and no such decisions were affected by any lack of information on plaintiffs' part. The "market transactions" were pure; the trust relationships allegedly were not. Rule 10b–5, however, protects the former and not the latter.

adopted by the majority as a basis for their alternative holding.

7. The case is thus unlike *Lewelling v. First California Co.,* 564 F.2d 1277, 1280 (9th Cir. 1977), where the court found that the plaintiff had veto authority and "no transaction was complete until [plaintiff] had the opportunity to exercise his veto and had failed to do so."

8. Plaintiffs do not contend that their interests as beneficiaries or principals under the agreements were securities. Even if such a conten-

Information material to the decision whether to terminate the trust or agency agreements is outside the penumbra of § 10(b) as defined in *Santa Fe Industries, Inc. v. Green,* because such a termination is not a security transaction. *Cf. Daniel v. International Brotherhood of Teamsters,* —— U.S. ——, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).[8] Section 10(b)'s fundamental purpose is to assure that full information is available to decision makers in security transactions. *See,* in addition to *Santa Fe,* 430 U.S. at 478, 97 S.Ct. 1292, *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Protection of those who have entrusted the decision making to others is a concern of state law, for which a cause of action under § 10(b) should not be inferred. *Cf.* 430 U.S. at 478, 97 S.Ct. 1292.

The same is true of the decision whether to sue the trustee or agent for breach of fiduciary duty, which is urged as a basis on which these actions can be maintained. Relying upon *Wright v. Heizer Corp.,* 560 F.2d 236, 250 (7th Cir. 1977), *cert. den'ed,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), plaintiffs argue that if Continental had made the disclosures in issue, they could have sued in a state court to enjoin the purchases. In that case information withheld by the majority shareholder from minority shareholders was held to be material because the latter, although lacking the authority to veto the securities transaction, could have brought suit in a state court to block the transaction as violative of the fiduciary responsibility of the majority shareholder and the directors. *Accord, Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).[9] In *Wright,*

tion were tenable after *Daniel* and termination of the trust could be said to be a sale of securities, claims based on that theory would be retention claims squarely barred by *Blue Chip.* See Part I, A, *supra.*

9. *Cf. Santa Fe,* 430 U.S. at 474 n. 14, 97 S.Ct. 1292. *See also* Note, *Suits for Breach of Fiduciary Duty Under Rule 10b–5 After Santa Fe Industries, Inc. v. Green,* 91 Harv.L.Rev. 1874, 1893–1898 (1979), discussing whether the plaintiffs in such a case should be required to

*Goldberg,* and other similar cases [10] materiality and presumed reliance were established by a showing of failure to disclose to persons who had not elected to have investment decisions made by an agent or trustee. We decline to extend these holdings to a claim made by persons who have deliberately chosen to delegate the power to make investment decisions that the recipient of the delegated power has misused it. Abuse of the relationship between the parties to the delegation is the concern of state law, not federal securities law.

This brings us to the second principle enunciated in Part IV of *Santa Fe Industries, Inc. v. Green,* which, in summary, is that, in deciding whether Congress intended to create a given cause of action by the federal securities laws, limited as they are in purpose, a court should consider "whether the cause of action [is] one traditionally relegated to state law . . .," 430 U.S. at 478, 97 S.Ct. at 1303, and the possible disadvantages of overlapping and possibly inconsistent state and federal regulation, 430 U.S. at 478–479, 97 S.Ct. 1292. The effect of adopting the position asserted by plaintiffs would be, as Judge Flaum pointed out in his opinion, to superimpose on state fiduciary law "a requirement that trustees inform their beneficiaries of information prior to making investments solely within the trustees' discretion," 431 F.Supp. at 297, on pain of bearing the risk of loss. The same would be true with respect to securities brokers or other agents buying and selling for discretionary accounts. There would be no conceptual reason for limiting such a disclosure obligation based on § 10(b) and Rule 10b–5 to information about arguable conflicts of interest, and plaintiffs do not so limit their claims in their complaints. But even if, for pragmatic reasons, such a limitation were imposed, a substantial, ill-defined, and often indeterminate disclosure obligation would remain. Defining it in each case would require federal litigation in which usually the most likely basis for relief would lie in pendent state law claims. We think the *Santa Fe* decision militates against such an extension of the implied cause of action under § 10(b) and Rule 10b–5.

That a cause of action should not be implied under the circumstances presented in this case is confirmed by *Blue Chip,* even though plaintiffs were in a general sense purchasers of securities. In that case the Court supported its statutory interpretation by an analysis of the policy considerations underlying the *Birnbaum* rule, an approach which the Court considered appropriate because a Rule 10b–5 action is a judicial creation that should be shaped by judicial perceptions of sound policy. 421 U.S. at 737, 95 S.Ct. 1917. The Court wrote of the "danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b–5" as a concern that was founded on two grounds. *Id.* at 740, 95 S.Ct. at 1927. Both were pragmatic: The first was that allowing persons who had not actually purchased or sold securities to recover on the basis of assertions that they would have done so but for the alleged misrepresentation or failure to disclose would foster abuse of the judicial process by persons with meritless or dubious claims.[11] The second concerned the unrelia-

---

show that their state court action would succeed or only that it could have been brought.

**10.** *See also Goodman v. Epstein,* 582 F.2d 388, 412–414 (7th Cir. 1978), decided after this case was briefed and argued. *Cf. Sunstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1049–1051 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977).

**11.** The first ground of the vexatiousness argument is summarized by the Court as follows:
But in this type of litigation, where the mere existence of an unresolved lawsuit has settlement value to the plaintiff not only because of the possibility that he may prevail on the merits, an entirely legitimate component of settlement value, but because of the threat of extensive discovery and disruption of normal business activities which may accompany a lawsuit which is groundless in any event, but cannot be proved so before trial, such a factor is not to be totally dismissed. The *Birnbaum* rule undoubtedly excludes plaintiffs who have in fact been damaged by violations of Rule 10b–5, and to that extent it is undesirable. But it also separates in a readily demonstrable manner the group of plantiffs

bility of evidence that a plaintiff had failed to act, rather than that he had acted, by reason of a violation of Rule 10b–5. The claim of a plaintiff who had not actually bought or sold (that is, who had not indisputably made an investment decision) would depend on uncorroborated oral testimony as to "[t]he manner in which the defendant's violation caused the plaintiff to fail to act," which would be likely to consist of matters "totally unknown and unknowable to the defendant," *id.* at 746, 95 S.Ct. at 1930. Finally, the Court said,

> In the absence of the *Birnbaum* doctrine, bystanders to the securities marketing process could await developments on the sidelines without risk, claiming that inaccuracies in disclosure caused nonselling in a falling market and that unduly pessimistic predictions by the issuer followed by a rising market caused them to allow retrospectively golden opportunities to pass.

*Id.* at 747, 95 S.Ct. at 1931.

In the case at bar, plaintiffs' claims that if they had been furnished the information Continental withheld they would have terminated the trust or agency agreements or sued to enjoin the securities transactions are analogous to the claim of a plaintiff who says he would have bought or sold a security absent the deception complained of. Not only would such a claim have to be proved by oral testimony concerning hypo-

thetical facts "totally unknown and unknowable to defendant" see 421 U.S. at 746–747, 95 S.Ct. at 1930,[12] but allowing such a claim would permit plaintiffs and others similarly situated to await without risk the outcome of the investments made by the investment agent or trustee and then select an appropriate theory on which to challenge those that proved unsuccessful. See 421 U.S. at 747, 95 S.Ct. 1917.

 Denial of the federal claims asserted here does not mean, as plaintiffs suggest it would, that one who buys securities through a discretionary account or through another agent or trustee is outside the protection of § 10(b) and Rule 10b–5. Our holding does not affect any claim the principal or beneficiary may assert, alone or jointly with the agent or trustee, against the seller of the securities. Such a claim is not before us.

It is worth noting that our holding is not out of step with the other recent decisions of the Supreme Court in this field of the law in addition to the *Santa Fe* and *Blue Chip* cases. Beginning in 1975 the Supreme Court has exercised its certiorari jurisdiction in eight private federal securities laws cases, and each time it has limited the federal remedy or its exercise.[13] A commentator noting this development in 1977 said, "There can be little doubt about the intensity of the Court's concern over the expansion of securities liability and its determina-

who actually purchased or actually sold, and whose version of the facts is therefore more likely to be believed by the trier of fact, from the vastly larger world of potential plaintiffs who might successfully allege a claim but could seldom succeed in proving it. And this fact is one of its advantages. 421 U.S. at 742–743, 95 S.Ct. at 1929.

**12.** See also the following footnote in the concurring opinion of Justice Powell, in which Justices Stewart and Marshall joined:

Proving, after the fact, what "one would have done" encompasses a number of conjectural as well as subjective issues: would the offeree have bought at all; how many shares would he have bought; how long would he have held the shares; were there other "buys" on the market at the time that may have been more attractive even had the offeree known the facts; did he in fact use his

available funds (if any) more advantageously by purchasing something else? 421 U.S. at 758, n. 2, 95 S.Ct. at 1936.

**13.** The cases in addition to *Blue Chip* and *Santa Fe* are *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), and *Daniel v. International Brotherhood of Teamsters,* —— U.S. ——, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), both cited earlier in the text. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 688 (1976), *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), and *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), all dealing with substantive issues not raised in these appeals, and *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), dealing with venue in a securities law action against a national bank.

tion to curb." 4 Bromberg, Securities Law, Fraud, SEC Rule 10b–5, § 384.2 (1977).

Also, the other court of appeals that has addressed the question before us has held as we do, albeit without as extensive an explanation of reasons as we have given. *Wilson v. First Houston Investment Corp.*, 566 F.2d 1235, 1243 (5th Cir. 1978), held that purchases and sales made by a bank for a discretionary agency account established by the plaintiff were "too remote to satisfy the 'in connection with purchase and sale' requirement as contemplated by *Blue Chip Stamps.*" In accord is a dictum of the Second Circuit, in a panel decision later reversed in banc on grounds unrelated to the point before us: after observing that the purpose of § 10(b) is to enable a buyer or seller of securities properly to appraise their value, the court said that this purpose

> would normally not be furthered by permitting persons on whose behalf others buy, sell and trade to bring actions under § 10(b) against their agents.

*Schoenbaum v. Firstbrook*, 405 F.2d 200, 212 (2d Cir. 1968), *rev'd in banc*, 405 F.2d 215, *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).[14]

■ In summary, we hold that a cause of action under § 10(b) and Rule 10b–5 does not lie to redress breaches of fiduciary or contractual duties owed the plaintiff by a trustee or agent to whom the plaintiff has given discretionary authority to purchase and sell securities. The fundamental purpose of § 10(b), *viz.*, providing those who are to decide whether to buy or sell securities with the information needed to make that investment decision, would not be served by implying such a cause of action. When the trustee or agent alone makes the investment decision to purchase or sell, his failure to disclose information about the

purchase or sale to the beneficiary or agent does not satisfy the "in connection with" requirement of § 10(b). The enforcement of fiduciary and contractual duties owed by a trustee or agent to the beneficiary or principal is the concern of state law, not the federal securities laws.

## II. *Pendent State Law Counts*

### A. *The Appropriateness of Dismissal in Light of the Statute of Limitations Problem*

■ Plaintiffs' pendent state law claims were dismissed by an order entered subsequent to the one dismissing the federal securities law claims. Following supplemental briefing on the issue of jurisdiction, Judge Flaum held that although the court retained the power to exercise pendent jurisdiction over plaintiffs' state law claims, judicial economy, convenience, and fairness warrant the exercise of his discretion to dismiss them. We hold that this was an abuse of discretion in the circumstances of this case.[15]

■ There is no doubt that federal jurisdiction over the pendent claims continues. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), makes it clear that federal jurisdiction to try a pendent claim exists, even if the federal claim is dismissed before trial, if the federal claim is "not insubstantial." Under this test, "if there is any foundation of plausibility to the claim federal jurisdiction exists." 13 Wright & Miller *Federal Practice and Procedure*, Section 3564 (1975). *See also Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Hagans v. Lavine*, 415 U.S. 528, 536–537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Judge Flaum correctly found,

14. *Accord, Blackmar v. Lichtenstein*, 438 F.Supp. 803 (E.D.Mo.1977), (relying upon the decision of the district court in the case at bar); *Rippey v. Denver United States National Bank*, 260 F.Supp. 704, 715 (D.Colo.1966).

15. As Judge Magruder said in *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954),

> "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

That plaintiffs' claims under section 10(b) were not 'wholly insubstantial,' 'obviously frivolous' or 'obviously without merit' is best demonstrated by the fact that Judge McGarr, after a thorough review of the then-existing law, upheld plaintiffs' securities laws claims. Moreover, although this court remains convinced that *Santa Fe Industries, Inc. v. Green, supra,* invalidates plaintiffs' section 10(b) and rule 10(b)–5 claims, those claims alleging defendant's omissions or misstatements concerning purchasers or sale of securities for plaintiffs' trusts are not so lacking in merit that they were included in plaintiffs' complaints only to confer jurisdiction in this court over plaintiffs' state law claims.

The court was of the view, however, that dismissal of the pendent claims was proper because plaintiffs' fiduciary

duty claims involve important and novel issues of state law regarding proper banking procedure, and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, and by procuring for them a surer-footed reading of applicable laws." [*Gibbs*] 383 U.S. at 726, 86 S.Ct. at 1139.

The court believed that the Illinois courts would afford plaintiffs a forum. It is our contrary belief that leads us to reverse on this point.

The earliest of the cases before us was filed in 1972, the latest in 1974. In the district court they were initially assigned to one judge, reassigned to another, and again reassigned to a third. Judgments were finally entered in late 1977, since which time the cases have been pending on appeal. Plaintiffs were not responsible for any appreciable part of the delay. While disposition of plaintiffs' securities law claims has been thus delayed through no fault of theirs, the Illinois statute of limitations has continued to run, and, it seems likely, would bar their state claims if those claims were refiled in a state court.

In August, 1976, the applicable Illinois statute of limitations, Ill.Rev.Stats., 1977,

ch. 83, § 24a, was amended by adding the italicized words and deleting the bracketed words shown in the following quotation of the statute:

In the actions specified in this Act or any other act or contract where the time for commencing an action is limited, if judgment is given for the plaintiff but reversed on appeal; or if there is a verdict for the plaintiff and, upon matter alleged in arrest of judgment, the judgment is given against the plaintiff; or *the action is voluntarily dismissed by the plaintiff* [if the plaintiff is nonsuited], or the action is dismissed for want of prosecution then, whether or not the time limitation for bringing such action expires during the pendency of such suit, the plaintiff, heirs, executors, or administrators, may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or given against the plaintiff, or after the *action is voluntarily dismissed by the plaintiff* [plaintiff is nonsuited] or the action is dismissed for want of prosecution.

The term "nonsuited," deleted by the amendment, meant involuntary dismissal, not voluntary dismissal. *Koch v. Sheppard,* 223 Ill. 172, 79 N.E. 52 (1906). Thus, if a plaintiff's suit in the federal court was dismissed for lack of jurisdiction, he was protected by the statute. *Factor v. Carson Pirie Scott & Co.,* 393 F.2d 141, 147–148 (7th Cir.), *cert. denied,* 393 U.S. 834, 88 S.Ct. 107, 21 L.Ed.2d 105 (1968); *Cf. Hupp v. Gray,* 46 Ill.App.3d 381, 5 Ill.Dec. 8, 361 N.E.2d 8 (1977).

■ Although we are unaware of any relevant cases decided since the amendment, it would appear that it has the effect of removing involuntary dismissals from the protection of § 24a. Thus plaintiffs' state law claims, if now asserted in an Illinois court after dismissal by the district court, would be vulnerable to motions to dismiss under the Illinois five-year statute of limitations, Ill.Rev.Stats., 1977, ch. 831, § 16, which is applicable in the absence of protections from § 24a. When questioned

at oral argument, counsel for Continental did not dispute this proposition and was unwilling to waive the statute of limitations as a condition of the dismissals. Thus it appears likely if not certain that if the involuntary dismissals of plaintiffs' state law claims are allowed to stand, those claims will be time-barred even though they were timely asserted in the federal court.

Under these circumstances, plaintiffs should have been permitted to pursue their pendent state claims in the federal actions. A number of district courts have held that a pendent state law claim should be retained when there is a substantial possibility that a subsequent state court suit on the claim may be time-barred. *See Meyerhofer v. Empire Fire & Marine Ins. Co.*, 74 F.R.D. 151, 154 (S.D.N.Y.1977); *Haber v. County of Nassau*, 411 F.Supp. 93, 99 (E.D. N.Y.1976); *Knuth v. Eri-Crawford Dairy Cooperative Ass'n*, 326 F.Supp. 48, 57 (W.D. Penn.1971), *modified*, 463 F.2d 470 (3rd Cir. 1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973). *See also McLaughlin v. Campbell*, 410 F.Supp. 1321, 1326 (D.Mass.1976), where the district court dismissed plaintiff's pendent claims when he dismissed plaintiff's § 10(b) claim, but only upon the proviso "that these counts may still be brought in state court." *Id.* at 1326. At least when, as here, a plaintiff has pursued his federal claim in good faith and with diligence, his pendent claim should not be foreclosed by the passage of the time required to dispose of the federal claim.

B. *The Primary Jurisdiction Argument*

On its cross-appeal defendant argues that the district court erred in denying its motion to stay or dismiss the state law claims with respect to which jurisdiction is based on diversity of citizenship, *see note 3, supra*, in order to permit consideration of Continental's alleged conflict of interest by the Comptroller of Currency under the doctrine of primary jurisdiction. Plaintiffs have moved to dismiss the cross-appeal on the ground that the orders sought to be appealed from are not final and appealable. Once previously Continental attempted to

appeal the district court's refusal to dismiss or stay on the basis of the primary jurisdiction of the Comptroller. This court dismissed those appeals on the ground that the orders were not final. We grant the motion to dismiss the cross-appeal under the doctrine of law of the case. *See Thill Securities Corp. v. New York Stock Exchange*, 469 F.2d 14, 17 (7th Cir. 1972).

It is necessary, however, for us to consider defendant's primary jurisdiction argument as a possible defense to the pendent claims, because defendant, as the prevailing party in the district court, is entitled to urge "on appeal any ground in support of . . . [the] . . . judgment, whether or not that ground was relied upon or even considered by the trial court." *United Electrical Radio & Machineworkers of America v. Honeywell*, 522 F.2d 1221, 1224 n.4 (7th Cir. 1975). *Accord, Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Wright v. Heizer Corp.*, 560 F.2d 236, 246 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

Defendant argues that the theory of recovery central to the state law counts is that a conflict of interest arises from Continental's simultaneously engaging in investment advising and commercial lending, and that such an alleged conflict of interest is a matter solely within the scope of the regulatory powers of the Comptroller of the Currency. As we read plaintiffs' complaints, however, they assert that, if Continental is to lend certain companies money and simultaneously invest in those companies' securities, it must disclose that it is going to do so and must exercise whatever knowledge it has in the best interests of the plaintiffs pursuant to its fiduciary duties. The mere fact that Congress has enacted a regulatory statute or established an administrative agency does not by itself preclude state regulation of the industry. *Tcherepnin v. Knight*, 389 U.S. 332, 343–346, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Furthermore, defendant does not allege any conflict between the federal and state regulations applicable to this case. In fact, the

federal regulatory scheme expressly defers to state law in trust matters. *See* 12 C.F.R. § 9.12 (1978). In the absence of such a conflict, the primary jurisdiction doctrine is inapplicable. *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 300, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). Nothing we have said is to be taken as an expression of opinion on the merits of the state law claims.

The judgments of the district court are affirmed insofar as they dismiss the federal securities law counts of the several complaints for failure to state claims upon which relief can be granted. The judgments are reversed insofar as they dismiss the pendent state law counts. The case is remanded to the district court for further proceedings consistent with this opinion.

Affirmed In Part; Reversed In Part; Remanded With Directions.