**VILLAGE OF ARLINGTON HEIGHTS,** as subrogee of Village of Arlington Heights Fire Pension Fund and Village of Arlington Heights Police Pension Fund, Village of Arlington Heights Fire Pension Fund, and Village of Arlington Heights Police Pension Fund, as principal and as subrogee of Village of Arlington Heights Fire Pension Fund, Plaintiffs,

v.

Lee L. **PODER** and Drexel Burnham Lambert Government Securities, Inc., a Delaware Corporation, Defendants.

No. 88 C 3634.

United States District Court, N.D. Illinois, E.D.

May 3, 1989.

MEMORANDUM ORDER
AND OPINION

ROVNER, District Judge.

## I. INTRODUCTION

Three separate complaints [1] were filed in this case by the Village of Arlington Heights ("Village"), the Village of Arlington Heights Fire Pension Fund ("Fire Fund"), and the Village of Arlington Heights Police Pension Fund ("Police Fund") [2] against Lee L. Poder ("Poder"), the Village's former treasurer, and Drexel Burnham Lambert Government Securities, Inc. ("Drexel") for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. The plaintiffs also assert various Illinois state law claims based on a theory of pendent jurisdiction. Plaintiffs claim that during his tenure as Village treasurer, Poder used the Funds' assets to complete a series of unauthorized and highly speculative trades in government securities. Drexel acted as a broker in executing some of these trades.

Drexel moved to dismiss the federal securities claims pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). Drexel also moved for dismissal of the state law claims for lack of pendent jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted. Because the complaints in this case are substantially similar, the Court shall dispose of defendant's motions in a single opinion. For the reasons set forth below, the motions are denied in part and granted in part.

## II. FACTS

Poder was Treasurer of the Village from approximately May, 1983, to May, 1987. By statute, the Village Treasurer was the custodian of the Funds' assets. The authority to control and manage the assets of the Funds, however, is vested exclusively in their respective boards of trustees. In 1986, Poder opened accounts at Drexel in

---

**1.** The three First Amended Complaint will be referred to collectively as the "complaints."

**2.** The Police Fund and the Fire Fund will be referred to collectively as the "Funds."

the name of the Funds. Poder allegedly had no authority to open these accounts and concealed the existence of the accounts from the Village officials and from the Funds' boards of trustees.

Plaintiffs contend that Poder directed Drexel to execute trades in government securities and repurchase agreements. Drexel allegedly executed trades despite its knowledge that Poder was engaging in "highly speculative" trading, as opposed to "investment" trading more suitable for pension fund assets. As a result of the trading, plaintiffs sustained losses in the amount of commissions paid to Drexel, the reduction of its assets, and other consequential damages.

Plaintiffs contend that Drexel either knew or acted in reckless disregard of the fact that Poder lacked authority to open the accounts. Plaintiffs allege that Drexel made no effort to determine whether Poder had any authority to open the accounts, nor did Drexel obtain a resolution or other documents from the boards of trustees authorizing the opening of the accounts. Plaintiffs also argue that Drexel owed them a fiduciary duty and that Drexel breached that duty by failing to inquire in a timely manner as to Poder's authority to engage in the transactions.

## III. DISCUSSION

In ruling on a motion to dismiss, the allegations of "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct.

99, 102, 2 L.Ed.2d 80 (1957). When considering a defendant's motion to dismiss, the allegations must be viewed in the light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Thus, the well-pleaded facts in the complaint must be accepted as true. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). *See also Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986) (allegations of the complaint, along with the reasonable inferences to be drawn therefrom must be accepted as true).

### A. Section 10(b) of the Federal Securities Laws

Drexel's first argument is that plaintiffs fail to state a claim under Section 10(b) [3] and Rule 10b–5 [4] of the federal securities laws. Specifically, Drexel claims that plaintiffs do not allege: (1) material misrepresentations or omissions; (2) fraud "in connection with" the purchase or sale of securities; or (3) "loss causation." Drexel also argues that absent specific allegations of a special duty of trust or confidence, Drexel's only duty to its customers is to faithfully execute trades. Drexel further contends that the complaints fail to state a cause of action for aiding and abetting Poder's violations of the federal securities laws.

### 1. Material Misrepresentations or Omissions

Rule 10b–5(b) makes it unlawful to make an untrue material misrepresentation or

---

**3.** Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) states in part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national security exchange—

(b) To use or employ in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**4.** Rule 10b–5 promulgated by the Securities and Exchange Commission (17 C.F.R. Sec. 240.10b–5) makes it unlawful, in connection with the purchase or sale of a security:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person.

omit to disclose material information in connection with the purchase or sale of securities. Drexel contends that plaintiffs fail to allege that it misrepresented or omitted to disclose any material facts. Instead, according to Drexel, plaintiffs merely claim that Drexel breached an alleged fiduciary duty to the Funds which enabled Poder to engage in the unauthorized trades. Drexel argues that such a breach of fiduciary duty does not violate Section 10(b) or Rule 10b–5.

■ The Village contends that its theory of liability is based upon Rule 10b–5(a) and (c), not 10b–5(b) because there was a "deceptive course of business and not a misrepresentation, omission or a *naked* breach of a fiduciary duty...." Arlington Heights Mem. at 3 (emphasis in original). The Funds, however, allege violations of Rule 10b–5(a), (b), and (c). *See* Police Fund Complaint, ¶ 9; Fire Fund Complaint, ¶ 7. Plaintiffs also argue that Drexel "had an obligation to verify that Poder was authorized to direct the trades that Drexel ... executed. Its failure to do so is the omission which gives rise to a violation of Rule 10b–5." Fire Fund Mem. at 8.

Rule 10b–5 has three subsections. In addition to prohibiting material misrepresentations or omissions in subsection (b), subsections (a) and (c) clearly prohibit the use of "any device, scheme, or artifice to defraud" and the commission of "any act, practice, or course of business which operates or would operate as a fraud or deceit." 17 C.F.R. 240.10b–5 (a) and (c). Subsections (a) and (c) do not require a misrepresentation or omission. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1971) (although subsection (b) of Rule 10b–5 requires an untrue statement or omission of material fact, subsections (a) and (c) "are not so restricted"). The complaints allege that Drexel's conduct operated as a fraud in connection with the purchase or sale of a security. Accordingly, these allegations are sufficient to withstand a motion to dismiss. *Accord, Arlington Heights Police Pension Fund v.*

*Poder,* 700 F.Supp. 405, 406 (N.D.Ill.1988) (Bua, J.).

■ With respect to Rule 10b–5(b), the Seventh Circuit has recently stated that "[a]n omission or misstatement is material if a substantial likelihood exists that a reasonable investor would find the omitted or misstated fact significant in deciding whether to buy or sell a security." *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1233 (7th Cir.1988). The Funds allege that Drexel failed to inform them that Poder was making unauthorized transactions. As stated in a recent case involving similar allegations: "[T]he relevant omission alleged is the failure to inform the investor that defendant was making purchases and sales. *No omission could be more material than that." Hometown Sav. & Loan Ass'n v. Moseley Securities Corp.,* 703 F.Supp. 723, 724 (N.D.Ill.1988) (Norgle, J.) (emphasis added). *See also Board of Trustees v. Poder,* Nos. 88 C 3851, 88 C 3895, slip op. at 3, 1988 WL 89923 (N.D.Ill. Jan. 24, 1989) (Norgle, J.). This Court agrees with Judge Norgle's analysis. Drexel's alleged failure to inform the Funds of Poder's transactions was clearly a material omission. Accordingly, plaintiffs' allegations meet the requirements of Rule 10b–5(b).

### 2. *"In Connection With"*

■ "Section 10(b) and Rule 10b–5 are directed at fraud 'in connection with the purchase or sale' of securities." *Congregation of the Passion, Holy Cross v. Kidder Peabody,* 800 F.2d 177, 181 (7th Cir. 1986) (citations omitted). Drexel contends that the conduct alleged by the plaintiffs does not satisfy the "in connection with" requirement because "any deception alleged by plaintiffs related solely to the issue of Poder's authority to engage in the transactions at issue and was not in connection with the purchase or sale of any security." Drexel Reply Mem. at 6.

To support this argument Drexel relies on three cases that are clearly distinguishable from the facts in the present case. In each of these cases the plaintiffs knowingly surrendered their rights to make deci-

sions concerning the purchase or sales of securities. In the first case, *O'Brien v. Continental Illinois Nat. Bank and Trust Co.*, 593 F.2d 54 (7th Cir.1979), plaintiffs (trustees of nine union or employee pension trust funds) entered into an agreement with the defendant bank "under which the funds of the pension trust were turned over to the bank for investment." *Id.* at 57. The bank "was given the responsibility of making such investments as in its sole discretion it saw fit, subject to a fiduciary duty of due care." *Id.* The plaintiffs had "no right to receive notice of, or to be consulted about, proposed investments and no right to veto investment decisions." *Id.*[5]

In the present case, plaintiffs allege that they never delegated any authority to Poder, nor were they aware of the accounts Poder opened with Drexel. Thus, they were completely denied information that would or might have been useful in deciding to buy or sell the securities that were traded in their accounts.

The second case relied upon by Drexel is *Congregation of the Passion, Holy Cross v. Kidder Peabody*, 800 F.2d 177 (7th Cir. 1986). In that case plaintiff hired an investment advisor to manage its retirement funds. That advisor was given authority to execute investment transactions on behalf of the funds. The defendants executed the transactions requested by the advisor. *Id.* at 178–79. As in *O'Brien*, the court found that there was no violation of Section 10(b) or Rule 10b–5 where the plaintiff transferred the full authority to make investment decisions to an investment advisor. Thus, the plaintiff did not have to approve each transaction. *Id.* at 181. As discussed above, the complaints in the present case do not allege that plain-

tiffs transferred any authority to Poder to make investment decisions for the Funds.

Finally, Drexel relies on *Capalbo v. Paine Webber, Inc.*, 672 F.Supp. 1048 (N.D. Ill.1987) in which there had been a previous delegation of authority to a securities broker to make investment decisions. Relying on *O'Brien* and *Congregation of the Passion*, Judge Norgle dismissed two counts after concluding that there was no violation of Rule 10b–5 because the alleged misrepresentations and omissions did not relate to the plaintiff's decision to purchase or sell securities. Instead, the alleged fraudulent conduct related to the plaintiff's decision to retain an investment account. *Id.* at 1052. Unlike *Capalbo*, plaintiffs here made no such decision to retain an investment account.

The allegations in the present case are that: (1) the Funds had the exclusive authority to make investment decisions; (2) securities were purchased and sold without the Funds' consent; (3) Drexel knew or acted with reckless disregard of the fact that Poder had no authority to invest the Funds' assets through the Drexel account; (4) the trades Poder directed were unsuitable and speculative; (5) Drexel intentionally failed to inform the Funds of the trades; and (6) Drexel's execution of trades resulted in the losses incurred by the Funds. Accepting these allegations as true, the alleged fraud was in connection with the purchase or sale of securities. Therefore, the complaints satisfy the "in connection with" requirement of Section 10(b) and Rule 10b–5.

### 3. *Loss Causation*

 Drexel contends that plaintiffs fail to adequately allege "loss causation." In securities fraud cases, plaintiffs must

---

**5.** Although the facts of *O'Brien* are distinguishable from the allegations in the present complaint, some of the analysis in *O'Brien* is useful. In determining whether there was a cause of action under Rule 10b–5, the court stated:

> [T]he relevant inquiry is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they actually did purchase or sell.

The important point for our analysis is the decision to which the nondisclosure related. If that decision is whether to purchase or sell a security, the nondisclosure is in connection with the purchase or sale. Here, however, that decision was not whether Continental should buy or sell the securities in question, for the terms of the trust and agency agreements made that decision solely [the bank's] and plaintiffs had no voice in it.
593 F.2d at 60 (emphasis added).

prove both "loss causation" and "transaction causation." " 'Loss causation' means that the investor would not have suffered a loss if the facts were what he believed them to be; 'transaction causation' means that the investor would not have engaged in the transaction had the other party made truthful statements at the time required." *LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 931 (7th Cir.1988). Drexel argues that because plaintiffs failed to allege that Drexel made any misrepresentations of fact, material or otherwise, regarding the nature of the securities purchased by Poder, plaintiffs' federal securities claims must be dismissed for failure to allege "loss causation."

In rejecting Drexel's argument, the Court adopts the well-reasoned opinion of Judge Duff in a recent case involving similar allegations of unauthorized trading:

> In most § 10(b) and Rule 10b–5 cases, the plaintiff has agreed to purchase a security based on the defendants' misrepresentations or omissions about it. In these cases, the loss causation requirement means the plaintiff must prove that he would not have suffered the loss—i.e., the price of the security would not have fallen—had the facts been as he believed them to be. Here, however, plaintiff alleges that, had the facts been as he believed them to be, he would not have made the purchases at all. In such a case, transaction causation and loss causation merge: Since the plaintiff believed he was making no investment at all, any loss on the investment is directly related to the subject of defendant's fraud.

*Kayne v. Painewebber, Inc.*, 703 F.Supp. 1334, 1342, (N.D.Ill.1989) (Duff, J.). *See also Board of Trustees v. The Chicago Corp., et al.*, Nos. 88 C 3855, 88 C 3894, 88 C 3927, slip op., 1988 WL 135632 (N.D.Ill. Dec. 8, 1988) (Marshall, J.) *clarified on denial of reconsideration, Board of Trustees v. Chicago Corp.*, 708 F.Supp. 1499, 1502 (Duff, J.). As in *Kayne*, plaintiffs here did not believe that Poder, with the assistance of Drexel, was making trades on their behalf. Under these circumstances, any loss suffered by plaintiffs is directly related to the allegedly unauthorized trading of Poder and Drexel. Accordingly, plaintiffs have adequately alleged loss causation.[6]

### 4. *Duty to Disclose*

Drexel contends that under Section 10(b) and Rule 10b–5 an omission requires a duty to speak to be actionable and that Drexel had no such duty to inform plaintiffs about Poder's actions. Thus, Drexel argues that if Poder had no authority to order trades, the issue is the relationship between Poder and the Funds and not the relationship between the Funds and Drexel. Drexel further claims that the relationship between the Funds and Poder is a matter of traditional state common law, and not Rule 10b–5.

In support of this argument Drexel once again relies on a number of cases that are clearly distinguishable from the facts in the present action. First Drexel cites *Dirks v. Securities Exchange Commission*, 463 U.S. 646, 653–54, 103 S.Ct. 3255, 3260–61, 77 L.Ed.2d 911 (1983) and *Chiarella v. United States*, 445 U.S. 222, 227–35, 100 S.Ct. 1108, 1114–18, 63 L.Ed.2d 348 (1980). Both of these cases are inapposite in that they dealt with liability resulting from insider trading. In *Dirks*, the Supreme Court addressed the issue of whether a "tippee" assumes a fiduciary duty to a corporation's shareholders not to trade on material nonpublic information when the

---

**6.** In its briefs, Drexel relies heavily on *Rankow v. First Chicago Corp.*, 678 F.Supp. 202 (N.D.Ill. 1988), *rev'd*, 870 F.2d 356 (7th Cir.1989), a case recently reversed by the Seventh Circuit. In reversing the district court, the Seventh Circuit held that loss causation can be "demonstrated rather easily by proof of some form of economic damage," 870 F.2d at 367 *quoting Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 389 (2d Cir.), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), and reminded the district court that under *Conley v. Gibson*, plaintiffs are not required to *prove* that they can win on their pleadings but need only allege sufficient facts to raise valid claims. *Id.* at 366, 367 (emphasis supplied). Plaintiffs have alleged that the losses sustained in each transaction were as a direct result of Drexel depriving the Funds of the right not to engage in the securities transaction. This allegation clearly surpasses the "very preliminary test" of *Conley v. Gibson*. *Id.* at 366.

tippee knows or should know that he received the information from an insider who has breached a fiduciary duty to the shareholders. The Court held that the duty to disclose material nonpublic information or abstain from trading does not arise from the mere possession of the information. Rather, that duty arises from the existence of a fiduciary relationship. 463 U.S. at 654–660, 103 S.Ct. at 3264.

The issue in *Chiarella* was "whether a person who learns from the confidential documents of one corporation that it is planning an attempt to secure control of a second corporation violates Section 10(b) ... if he fails to disclose the impending takeover before trading in the target company's securities." 445 U.S. at 224, 100 S.Ct. at 1112. The Court held that silence in connection with the purchase or sale of securities may operate as a fraud actionable under 10(b), but such liability is premised on a duty to disclose, such as that of a corporate insider to shareholders of the corporation. That duty arises from a relationship of trust and confidence between the parties to a transaction. "Application of a duty to disclose prior to trading guarantees that *corporate insiders*, who have an obligation to place the shareholder's welfare before their own, will not benefit personally through fraudulent use of material, nonpublic information." *Id.* at 230, 100 S.Ct. at 1115 (emphasis added). Clearly this holding does not support Drexel's contentions because in *Chiarella*, the Court was addressing a situation that was factually very different from the present case.[7]

Plaintiffs allege that Drexel owed a fiduciary duty to the Funds to inform them that their assets were being used for unwise trades and that Drexel failed to fulfill this duty. The plaintiffs are correct that under some circumstances a broker or dealer may well have a fiduciary duty to a customer. *Congregation of the Passion*, 800 F.2d 177, 182 (7th Cir.1986). *See also Board of Trustees v. Chicago Corp.*, Nos.

88 C 3855, 88 C 3894, 88 C 3927, slip op. at 3, 1988 WL 135632 (N.D.Ill. Dec. 8, 1988) (Marshall, J.) Accordingly, for purposes of this motion, plaintiffs have adequately alleged that Drexel had a fiduciary duty to the Funds.

### 5. *Aiding and Abetting*

■ Drexel contends that the complaints do not state a cause of action for aiding and abetting a violation of Rule 10b–5. In *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946–48 (7th Cir.1989) the court discussed the elements of a 10b–5 aiding and abetting cause of action. Referring to its earlier opinion in *Barker v. Henderson*, 797 F.2d 490, 495 (7th Cir.1986), the court stated that the plaintiff "must show that the alleged aider and abettor committed one of the 'manipulative or deceptive' acts proscribed under section 10(b) and Rule 10b–5 with the same degree of scienter that is required for primary liability." *Id.* at 947. Additionally, the plaintiff must show "(1) the existence of a primary violator; (2) knowledge by the aider and abettor of the primary violation; and (3) substantial assistance by the aider and abettor in the perpetration of the primary violation." *Id.* (citation omitted). *See also Board of Trustees v. Poder*, Nos. 88 C 3851, 88 C 3895, slip op. at 4, 1988 WL 89923 (N.D.Ill. Jan. 24, 1989) (Norgle, J.) (citations omitted).

Under this standard, the plaintiffs' claim for aiding and abetting is sufficient to withstand a motion to dismiss. Poder's primary violation of Section 10(b) and Rule 10b–5 is sufficiently pled. The complaints adequately state that Drexel knew or acted with reckless disregard of the fact that Poder was acting without authority and was committing violations of the securities laws. Plaintiffs sufficiently allege that Drexel substantially assisted in Poder's violation by executing the transactions he requested. Finally, Drexel's assistance was a "substantial factor" in causing the alleged loss to the Funds because Poder

---

**7.** Drexel also relies on *Congregation of the Passion*, 800 F.2d 177 (7th Cir.1986) to support their argument that Drexel's only duty was to faithfully execute trades. As discussed above, *Con-* *gregation of the Passion* is inapposite because the Funds allege they never gave Poder or Drexel any authority to make trades on their behalf.

could not have executed his fraudulent scheme without the services of brokers such as Drexel. *See Board of Trustees v. Liberty Group*, 708 F.Supp. 1504, 1507 (N.D.Ill.1989) (Holderman, J.).

### 6. *Unsuitable Trading*

■ Count III of the Funds' complaints, which are based on "information and belief," allege unsuitable and speculative trading. The Funds contend that Drexel recommended and persuaded Poder "to engage in speculative trading activities." Drexel argues that the Funds' allegations do not satisfy the particularity requirements of Fed.R.Civ.P. 9(b).

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule requires that the Funds "specify the time, place, and contents of any alleged false representation, and the full nature of the transaction." *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1279 (N.D.Ill. 1976).

The Funds allege that Drexel committed affirmative acts of persuasion, yet they have failed to allege any specific instance of Drexel persuading Poder to engage in unsuitable or speculative trading. The time, place, or contents of these alleged false representations are not specified. Accordingly, the requirements of Rule 9(b) are not met. Therefore, Drexel's motion to dismiss Count III of the Funds' complaints is granted. *Accord, Board of Trustees v. Liberty Group*, at 1506; *Board of Trustees v. The Chicago Corp.*, Nos. 88 C 3855, 88 C 3894, 88 C 3927, slip op. at 7–8.

### B. *State Law Claims*

Drexel contends that because the complaints fail to state a valid federal claim, there is no pendent jurisdiction over the state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). As discussed above, the plaintiffs have alleged valid claims under the federal securities laws; therefore, the Court has pendent jurisdiction over the state law claims.

### C. *Subrogation Claims*

■ The Village contends that because it reimbursed the Funds for some of their losses, it has standing as a subrogee to assert the rights of the Funds with respect to those losses. The Village argues that because it was Poder's employer, at the time the losses were sustained it became potentially liable on the theory of *respondeat superior*. The Village notes that both of the Funds have sued it on this and other theories in state court.

Drexel argues that Illinois law does not permit subrogation under such circumstances. Drexel argues that "potential liability" is not sufficient to confer standing on a subrogee. Drexel relies on *Inland Real Estate v. Tower Constr. Co.*, 174 Ill. App.3d 421, 123 Ill.Dec. 876, 528 N.E.2d 421 (1st Dist.1988) to support this argument.

Illinois law requires that for a subrogee to have standing to sue it must have a "legal duty" to pay the debt in question and must not be a stranger or a mere volunteer. *Inland*, 123 Ill.Dec. at 881–82, 528 N.E.2d at 426–427. *See also, American National Bank & Trust v. Weyerhaeuser*, 692 F.2d 455, 460 (7th Cir.1982) (applying Illinois law). In *American National Bank*, 692 F.2d at 463, the Seventh Circuit, surveying Illinois law, held that a fully choate legal obligation on the part of the subrogee is unnecessary; rather, the mere *"potential* for legal liability to the subrogor"* will support subrogation. Contrary to Drexel's intrepretation, the *Inland* court did not distinguish *American Nat. Bank* and did not hold that "potential liability" is insufficient to base standing as a subrogee. In that case, the court merely found that Inland could not substantiate its assertion of potential liability. *Inland*, 123 Ill.Dec. at 882–83, 528 N.E.2d at 427–28.

The Court agrees with the well-reasoned opinion of Judge Marshall of this district on this issue. In *Board of Trustees v. Chicago Corp.*, Nos. 88 C 3855, 88 C 3894, 88 C 3927, slip op. at 10, Judge Marshall found that the Village adequately stated a claim as the subrogee of the Funds. Judge

Marshall held that Drexel's argument "that the Village does not allege that it was under any obligation to cover the pension funds' trading losses overlooks the potential liability of the Village as Poder's employer." *Id.* Likewise, the potential liability of the Village as Poder's employer suffices to support its claim for subrogation here. Drexel's motion to dismiss the Village is denied.

## IV. CONCLUSION

For the reasons discussed above, Drexel's motion to dismiss is denied with the exception of the Funds' Count III concerning unsuitable trading. Drexel's motion to dismiss Count III is granted without prejudice.