John A. MADER et al., Plaintiffs-Appellants,

v.

Daniel E. ARMEL et al., Defendants-Appellees.

No. 71-1549.

United States Court of Appeals, Sixth Circuit.

June 15, 1972.

Lyman Brownfield, Columbus, Ohio, for plaintiffs-appellants; Laurence E. Sturtz, Walter J. McNamara, III, Columbus, Ohio, on brief; Brownfield, Kosydar, Bowen, Bally & Sturtz, Columbus, Ohio, of counsel.

Katheleen K. Haase, Larry H. Snyder, Columbus, Ohio, William T. Hicks, Springfield, Ohio, E. Searles Morton, Joseph B. DeVennish, Columbus, Ohio, Bitner Browne, Springfield, John L. Davies, John J. Perrini, John A. Carnahan, Jerry L. Riseling, William H. Schneider, E. James Hopple, Robert W. Newlon, Columbus, A. A. Sommer, Jr., Richard J. Cusick, Jr., Cleveland, Ohio, for defendants-appellees; Robert H. Hoffman, William G. E. Jacobs, Columbus, Ohio, on brief for Robert E. S. Young; Gordon E. Williams, Chamblin, Snyder & Casey, Columbus, Ohio, on brief, for Todd Tibbals.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is a class action for damages based upon alleged violation of antifraud provisions of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a et seq. Jurisdiction is based upon 15 U.S.C. § 78aa.

The plaintiffs were shareholders in an Ohio corporation named Certified Mortgage Corporation, which merged in 1959 into another Ohio corporation named Certified Credit Corporation. The general background of the case is set forth in the opinion of this court in Mader v. Armel, 402 F.2d 158 and will not be repeated here. This court held that the merger of the two corporations involved a sale of securities within the meaning of the Securities and Exchange Act, 15 U.S.C. § 78j, and Rule 10b–5 adopted by the Securities and Exchange Commission. The case was remanded for trial.

On remand the case was tried only on the issue of liability. Determination of the amount of damages was deferred. Trial of the liability issue resulted in a holding that defendants Armel, Savage and DeVennish are liable for such damages as may be established on further hearing of the case. The action was dismissed as to four defendants, including Todd Tibbals and Robert E. S. Young. Plaintiffs appeal under 28 U.S.C. § 1292(b) from the action of the District Court in dismissing Tibbals and Young as parties defendant. The District Court certified that its order involves a controlling question of law as to which

there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. The District Court also directed the entry of final judgment on the issue of liability, making an express determination that there is no just reason for delay. Rule 54(b), Fed.R.Civ.P.

District Judge Timothy S. Hogan rendered a comprehensive opinion containing findings of fact and conclusions of law. The only issue now before this court is whether the District Court committed reversible error in dismissing Tibbals and Young, both of whom were directors of Certified Credit Corporation, as parties defendant.

Plaintiffs assert that both Tibbals and Young are liable under 15 U.S.C. § 78t:

"§ 78t. *Liabilities of controlling persons*

"(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

"(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person."

Upon the basis of the evidence, Judge Hogan found that Tibbals was not a "controlling person," and that Young was a "controlling person" but acted in good faith and did not directly or indirectly induce the acts constituting the cause of action.

The District Court found that the solicitation involved in this case constituted "a manipulative or deceptive device and contained untrue statements of material facts." It was further held that the dominant force behind Certified Credit Corporation was defendant, Daniel Armel, who functioned as President and Chairman of the Board; and that as chief executive officer Armel was able to exercise control of the Board of Directors and the executive committee, as well as other corporate officers. The court further found that both Tibbals and Young had implicit confidence in Armel and that neither of them had any reason to doubt their confidence in him until after the events which are determinative in this case.

An architect by profession, Tibbals first became associated with Certified Credit Corporation in 1959. The District Court found that he never attended or had any occasion to attend any directors' meeting of the corporation or its affiliates until November 16, 1959, just twelve days before the fraudulent proxy solicitation was mailed. In holding that Tibbals was not a "controlling person" within the meaning of the statute, Judge Hogan found that:

"There is no evidence in this case—looking at it most favorably for inference purposes on behalf of the plaintiffs—that would justify any conclusion that Tibbals either knew there was anything wrong or should have known that there was anything wrong, or in any way, factually or legally, controlled anyone who knew that or was in combination for any purpose with anyone who knew or should have known that anything was wrong."

The following findings of fact were made by Judge Hogan with respect to Young:

"The defendant Young first became connected with Credit in the early 1950's and very shortly after its business commenced. Young was then in his early 40's. He was an undergraduate of Ohio State University and received his Doctor of Medicine from Harvard. He was, and still is, a very busy and very successful general surgeon and, in addition to the demands of his professional practice, he has

taught surgery at Ohio State University Medical School and supervised the operation of some family firms in Union County, Ohio. He has had no education in or experience with accounting matters or corporate financial matters. He had never been a director in what might be called an ordinary commercial company until he became a director of Credit. He and Armel had some passing acquaintance in school as youngsters. Armel also was a graduate of Ohio State, had achieved some prominence in the school editorial field while there, had spent some 15 or 16 years in the South and Southwest and returned to Columbus at about the time Credit was started. Armel, based on the early acquaintance, solicited Young's interest in Credit and it does appear from this record that Young and his family constituted the largest overall investor in Credit. In one fashion or another Young and what might be termed the more or less immediate members of his family invested overally in all of the related enterprises and in all the various types of capital issues some one-half million dollars plus. About one-fifth of this was in common stock of one type or another and the other four-fifths was in preferred stock and thrift certificates. The bulk of these investments were made prior to 1957 and the annual amounts were less thereafter. The change in tempo was related to the termination of a professional contract involving North American Aviation. Nonetheless, substantial investments were made in 1958 and 1959 by Young and his family and certainly there was no reduction in investments or withdrawal in either of those years. For some years prior to December, 1959, Young was not only a director of Credit, but also the chairman of its Executive Committee. The office was more a paper one than anything else. There is no indication in this record that the Executive Committee interfered in any way with the de facto control of Armel."

The District Judge ruled that, since Young was a "controlling person" within the meanings of the Act, he had the burden of showing good faith by a preponderance of the evidence, and that he had sustained this burden; that Young served as a director without compensation; that he did nothing directly or indirectly to induce the fraudulent proxy solicitation; that "he did not have the slightest idea anything was wrong until sometime in 1960 at the earliest;" and that "he relied fully on the Certified Public Accountants who bore a good reputation" and upon the annual published certifications of these accountants. The District Court held that the substantial investment of Young and his family continued throughout the events which gave rise to this case and this fact "speaks rather eloquently of his overall innocence." The court concluded that although Young was a "controlling person" and although his performance as a director was negligent, his actions or nonactions were in good faith.

■■ We conclude that an issue of fact is presented as to whether Tibbals was a "controlling person" and whether Young acted in good faith and did not "directly or indirectly induce the act or acts constituting the violation or cause of action." See Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Klapmeier v. Telecheck International, 315 F.Supp. 1360 (D.Minn.1970).

We hold that the findings of fact of the District Court are not "clearly erroneous." Rule 52(a) Fed.R.Civ.P.

It is further contended that the District Court committed reversible error in refusing to admit post-merger evidence. We find no abuse of discretion of the District Judge in refusing to hear testimony as to events that occurred after the merger under the facts and circumstances of this case.

Affirmed.