**Dean G. VANNEST, et al Plaintiffs,**

v.

**SAGE, RUTTY & CO., INC., et al., Defendants.**

**No. 90–CV–1143L.**

United States District Court, W.D. New York.

Dec. 23, 1997.

Linda H. Joseph, Jaeckle, Fleischmann & Mugal, Buffalo, NY, Edwin M. Larkin, Rochester, NY, for Dean G. Vannest, Howard O. Colwell, Ruth F. Davis, George C. Gordon, Jr., Maureen V. Cooper–Jones, Hope Welliver, Katalin M. Jenney, Marjorie Post Leary, Raymond N. Leroy, John M. McGuire, Elizabeth W. Pine, Nancy Gordon Vandivert and Karpus Investment Management, Inc.

Fred G. Aten, Jr., Rochester, NY, William E. Easton, Gullace & Easton, Rochester, NY, for Sage, Rutty & Co., Inc.

Michael A. Brady, Hagerty & Brady, Buffalo, NY, for Mullen Securities, Inc.

Donald M. Thompson, Rochester, NY, for Joel Johnston.

Arthur Makadon, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Alexander Geiger, Geiger & Rothenberg, Rochester, NY, for PNC Bank, National Ass'n.

Vincent S. Tracy, Jr., Tracy, Scott, Davis & Gioia, Buffalo, NY, Robert G. Welch, Philadelphia, PA, for Kenver Assurance Corp. of America, Kenver Corp., Pfeiffer House Mortg. Associates, Merion Follansbee Merion Historic Associates.

Robert G. Welch, Philadelphia, PA, pro se.

## DECISION AND ORDER

LARIMER, Chief Judge.

This case arises out of the sale of limited partnership interests in Pfeiffer House Mortgage Associates (Pfeiffer House). Defendant Sage, Rutty, the sales agent for the Pfeiffer House offering, sold the interests to plaintiffs through Karpus Investment Management, Inc. (Karpus). Karpus, also a plaintiff, purchased the interests on behalf of the other plaintiffs as their agent, pursuant to a limited power of attorney. The interests ultimately proved worthless.[1]

Plaintiffs (consisting of twelve individuals and Karpus) commenced this action in November 1990 asserting a variety of federal securities, common law and RICO claims against multiple defendants including Sage, Rutty. Since that time plaintiffs have amended their complaint and this Court has ruled on successive defense motions to dismiss and for summary judgment, thus narrowing the number and type of claims and defendants. Sage, Rutty remains a defendant and, to date, three claims remain pending against it: a claim pursuant to Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)) and SEC Rule 10b–5 (17 C.F.R. § 240.10b–5); a claim for fraud; and a claim for breach of contract/warranty.

Presently before me is Sage, Rutty's amended motion for summary judgment, seeking to dismiss plaintiffs' claim brought pursuant to Section 10(b)/Rule 10b–5. Sage, Rutty also seeks dismissal of the remaining state law claims on the ground that, absent the Section 10(b)/Rule 10b–5 claim, this Court lacks subject matter jurisdiction over the supplemental state law claims. For the reasons stated below, Sage Rutty's motion is denied.

## DISCUSSION

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or

---

1. A more detailed description of the factual background is set forth in three previous opinions, familiarity with which is assumed. These decisions are known as *Vannest I*, dated October 2, 1992; *Vannest II*, dated December 6, 1993; and *Vannest III*, dated March 31, 1997 (reported at 960 F.Supp. 651).

sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

In order to sustain a cause of action under Section 10(b) a plaintiff must allege that, "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiffs reliance on defendant's action caused plaintiff injury." *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 540 (2d Cir.1996) (citing *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 264 (2d Cir.1993)).

In this case, plaintiffs allege that Sage, Rutty made false representations and material omissions to Karpus regarding the Pfeiffer House investment. The undisputed facts show that George Karpus, president of Karpus Investment Management (Karpus), was retained by each of the individual plaintiffs to make investment decisions on his or her behalf. Each individual plaintiff gave Karpus complete discretion and authority to buy and sell securities on his or her behalf, as evidenced by a Limited Power of Attorney stating in relevant part as follows:

I, the owner . . . . . of the account of [name of plaintiff] hereby appoint Karpus Investment Management as my agent and attorney-in-fact with authority to purchase and sell stocks and bonds and any other securities for the account.

\* \* \*

You are authorized and empowered to follow all instruction given by Karpus Investment Management with regard to any purchases and sales. . . .

The individual plaintiffs had no contact with Sage, Rutty. No representations were made by Sage, Rutty to them. The Private Placement Memorandum, pursuant to which the offering was made, was delivered only to Karpus, and Karpus did not pass it along to any plaintiff. Karpus did not advise the plaintiffs about the Pfeiffer House investment. On behalf of each individual plaintiff, Karpus apparently signed purchase ("subscription") agreements, thus consummating the transactions. *See* Deposition of George W. Karpus, June 13, 1995, p. 114, lines 7–19.[2] Finally, none of the individual plaintiffs had a pre-existing or ongoing relationship with Sage, Rutty.

Because the individual plaintiffs delegated complete investment responsibility to Karpus, and therefore made no investment decisions, Sage, Rutty now asserts that their Section 10(b)/Rule 10b–5 claim cannot be sustained against it as a matter of law. Sage, Rutty relies on *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc.*, 800 F.2d 177 (7th Cir.1986). There, the Seventh Circuit held that no Section 10(b)/ Rule 10b–5 claim could be sustained by investors against securities dealers, when those investors had delegated complete in-

---

**2.** Karpus' deposition testimony is as follows:

Q: As you considered the Pfeiffer House offering as a potential investment, did you have communications about it with your clients?

A: No.

Q: Prior to the time you decided to invest your clients' money in the Pfeiffer House offering, did you provide your clients with copies of the private placement memorandum?

A: No.

Q: Prior to the time you made the investment for your clients, did you advise them in any way that you were considering the Pfeiffer House investment?

A: Not to my recollection.

vestment discretion and authority to a financial planner and therefore made no investment decisions.

*Congregation* involved a religious community that retained a financial planner for the purpose of investing and managing its million dollar retirement and education funds. The planner was given "full discretion to develop and implement a prudent portfolio strategy." *Id.* at 178–79. He did so, purchasing a variety of securities from various dealers, without approval or authorization from the community. The only information received by the community about the investments were confirmation receipts from the dealers. There were no other contacts between the dealers and the community.

After the planner lost substantial sums in risky arbitrage investments, the community sued both him and the dealers alleging, *inter alia*, that they had violated Section 10(b) and Rule 10b–5. The Seventh Circuit, affirming the district court, held that as a matter of law no Section 10(b) claim could be asserted by the community against the dealers because the community never made or even approved any investment decisions: all such decisions were made by the financial planner. Noting that Section 10(b) and Rule 10b–5 are directed at fraud "in connection with the purchase or sale of securities", the Circuit held that the relevant inquiry is "whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities ..." *Congregation*, 800 F.2d at 181 (citing *O'Brien v. Continental Illinois Nat'l Bank and Trust Co.*, 593 F.2d 54, 60 (7th Cir. 1979)). Because the community never made any investment decisions, any alleged misrepresentations or omissions by the dealers were not made "in connection with the purchase or sale of securities" by it.[3]

Determining whether *Congregation* applies in this case to preclude plaintiffs from asserting their § 10(b) claim against Sage, Rutty requires me to examine subsequent cases interpreting its holding, as well as one decision that preceded *Congregation*, and on which the *Congregation* court extensively relied.

*Congregation* cites extensively to *O'Brien v. Continental, supra.* In *O'Brien*, pension fund trustees sued the bank to which they had delegated complete investment authority, for failing to inform them of the bank's substantial interest in companies whose stock it was purchasing on the trust's behalf. The Seventh Circuit determined that no § 10(b) claim could be asserted against the bank because the alleged fraud involved the fiduciary relationship between the trustees and the bank (a state law matter), not the decision to purchase securities (a securities law matter). Thus, the trustee's remedy was a state law claim for breach of a fiduciary duty, or for breach of contract. "[A] cause of action under § 10(b) and Rule 10b–5 does not lie to redress breaches of fiduciary or contractual duties owed the plaintiff by a trustee or agent to whom the plaintiff has given discretionary authority to purchase and sell securities." *O'Brien*, 593 F.2d at 63.

The Circuit also stated that

Denial of the federal claims asserted here does not mean, as plaintiffs suggest it would, that one who buys securities through a discretionary account or through another agent or trustee is outside the protection of § 10(b) and Rule 10b–5. **Our holding does not affect any claim the principal or beneficiary may assert, alone or jointly with the agent or trustee, against the seller of the securities. Such a claim is not before us.** *Id.* at 62 (emphasis added).

Such a claim, however, is precisely what was before the Circuit in *Congregation.* There the Circuit went one step further than it had in *O'Brien*, by holding that where a principal has vested total authority in his agent, then the principal cannot sue **the broker** (with whom the agent dealt) pursuant to

3. Additionally, no duty to disclose existed between the dealers and the community. *Id.* at 182 (citing *Chiarella v. United States*, 445 U.S. 222, 230, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980)). There was no evidence that the dealers and the community had a special relationship of trust and confidence that would give rise to a duty to disclose. Indeed, other than the confirmation slips, there were no contacts whatsoever between the dealers and the community. The dealers' mere status as dealers was insufficient to create a duty to disclose. *Id.* at 182–183.

Section 10(b). *Congregation* relied on the same reasoning set forth in *O'Brien*—*i.e.*, the plaintiff made no investment decision because it gave all such authority to its agent.

The legal issue decided in *Congregation* is the same as that before me: *i.e.*, can investors who have delegated complete investment authority to an agent sue **the broker** with whom the agent dealt, pursuant to Section 10(b). The primary factual distinction between this case and *Congregation* is that in *Congregation* the financial planner (agent) was a defendant: in this case, the financial planner-agent (Karpus) is a plaintiff.

As *Congregation* is written, this does not appear to be a meaningful distinction. The financial planner's presence or absence had no bearing on the Circuit's analysis of the community's § 10(b) action against the **brokers**. Nonetheless, *Congregation* has not been followed widely, and where it has been followed, has involved circumstances where the agent was a defendant, not a plaintiff. *See, e.g., Sheldon Co. Profit Sharing Plan and Trust v. Smith*, 828 F.Supp. 1262, 1270 (W.D.Mich.1993) (citing *Congregation*, court found that no § 10(b) claim could be asserted by plaintiffs against brokers, where the plaintiffs had "deliberately transferred to [defendant investment advisors] full authority to make investment decisions" and thus the brokers were not "direct participants in any securities transaction between plaintiffs and defendants"); *Baranski v. Serhant*, 1986 WL 11985 (N.D.Ill.1986) (because plaintiffs delegated the authority to make investment decisions to defendant advisor, the court, citing *Congregation*, dismissed § 10(b) action against advisor, his brokerage firm and its principal); *see also Capalbo v. Paine Webber*, 672 F.Supp. 1048 (N.D.Ill.1987) (court dismissed § 10(b) claim against investment advisor and advisor's employer where plaintiffs gave advisor complete investment discretion and the court determined that the alleged misrepresentations concerned establishment of the brokerage accounts, not the sale or purchase of securities).

In other cases, courts have distinguished *Congregation* based upon a finding that the plaintiffs did not relinquish total investment control. Thus, in *Cox v. Eichler*, 765 F.Supp. 601 (N.D.Cal.1990) the court declined to follow *Congregation* (and *O'Brien*), because it determined that the *Cox* plaintiffs dictated certain investment guidelines and gave specific investment instructions to their agent. In *Medline Industries, Inc. v. Blunt, Ellis & Loewi, Inc.*, 1993 WL 13436 (N.D.Ill.1993) one of the plaintiffs was the wife of the corporate plaintiff's CEO. Her husband had purchased securities in her name. The defendants moved to dismiss the § 10(b) action asserted by her, citing *Congregation* and *O'Brien*, on the grounds that because she did not make any investment decisions (her husband did), no § 10(b) action could be sustained. The court denied defendants' motion on the grounds that genuine issues of material fact existed regarding the degree of control retained by the wife: there was some question whether she maintained final veto power.

This Court has found only one case interpreting *Congregation* in which the agent (to whom investment authority had been given) was a plaintiff. *Linsey v. E.F. Hutton & Co., Inc.*, 675 F.Supp. 1 (D.D.C.1987). There, a Christian Methodist Episcopal (CME) bishop brought a § 10(b) action against E.F. Hutton for alleged misrepresentations concerning the investment of monies belonging to the CME church. The bishop sued both individually and "as agent and trustee" for the church. However, the church expressly disavowed the bishop's authority to sue as representative of the church. Thus, relying on *O'Brien* and *Congregation*, the bishop asserted that because he was the decision-maker for the church funds, he had standing to sue individually.

The court rejected this reasoning, and found that he had no personal standing to sue because he was not the "purchaser or seller" of the securities: the church was. And because the church had expressly disavowed his role as their agent, he could not sue on the church's behalf. Thus, the case was dismissed. But for his express lack of authority to act as agent, however, it appears that the court might have found that the bishop had standing to sue on behalf of the church:

The Church, not Bishop Linsey, was the purchaser and seller of securities. The Church was capable of being deceived, through its agents, and the cause of action under section 10(b) thus belongs to the Church and not to its agent.

*Id.* at 4.

I do not believe that *Congregation* should be expanded beyond its own facts and its own holding. Other courts have not done so and on the facts of the case before me, I also believe *Congregation* should not bar plaintiffs' actions. In fact, many courts cite *Congregation* for the more limited principal enunciated in *O'Brien, i.e.,* a principal cannot sue **his agent** to whom he has given total investment authority, under Section 10(b). *See, e.g., Kayne v. PaineWebber, Inc.,* 703 F.Supp. 1334, 1340 (N.D.Ill.1989) ("In *Congregation* ... and *O'Brien,* the Seventh Circuit ruled that an investor who has delegated the entire authority to make investment decisions to his securities broker may not sue the broker under § 10(b) or Rule 10b–5 for misuse of his delegated powers"); *Linsey,* 675 F.Supp. at 4 (D.D.C.1987) (finding that in *Congregation* the plaintiff "made no investment decisions and consequently had no 10(b) cause of action against its **investment manager** ....") (emphasis added). Those courts that correctly describe *Congregation's* holding have relied on it only to dismiss claims brought against both the agent **and** the broker (and where the agent is more often than not an employee or affiliate of the broker). *See Sheldon Co. Profit Sharing Plan and Trust, supra; Baranski, supra.*

Applying *Congregation* to this case would strip plaintiffs of one of their most powerful legal remedies in a manner that seems inconsistent with fundamental laws of agency. Section 10(b) was enacted to address precisely the type of claims asserted by these plaintiffs and it makes little sense that these plaintiffs should be deprived of a cause of action under Section 10(b) simply because an agent acted on their behalf.

Moreover, *Congregation* is Seventh Circuit law. Neither side has cited me to, nor could I find, a Second Circuit case, either before or subsequent to *Congregation,* that precludes an investor from suing for false statements made to his agent in connection with the sale of securities. Thus, I decline to apply *Congregation* to the case before me. I find no case where another court has applied *Congregation* in circumstances precisely like those before me. Therefore, I decline Sage, Rutty's suggestion that, under availability of *Congregation,* I dismiss plaintiffs' § 10(b) claims.

## CONCLUSION

For the reasons set forth above, Sage, Rutty's amended motion for summary judgment (# 187) is hereby DENIED.

IT IS SO ORDERED.